Before STATE INDUSTRIAL BOARD, Respondent.

SOLON S. BERNSTEIN, Claimant, Respondent, *v.* BETH ISRAEL HOSPITAL and Another, Appellants.

*Third Department, May 16, 1923.*

**Workmen's compensation — relationship — doctor acting as interne in hospital is employee.**

A doctor, engaged by a hospital to act as interne and to perform his work under the direction of other doctors, who is to receive his room, board, laundry work and three uniforms a year as compensation, and who is subject to discharge, is an employee of the hospital and the finding of the State Industrial Board to that effect is affirmed.

HINMAN, J., and H. T. KELLOGG, Acting P. J., dissent, with opinion.

APPEAL by the defendants, Beth Israel Hospital and another, from an award of the State Industrial Board, made on or about the 13th day of July, 1922.

*E. C. Sherwood* [*William B. Davis* of counsel], for the appellants.

*Carl Sherman, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

KILEY, J.:

On the 25th day of March, 1921, the employer, the Beth Israel Hospital, reported that while the claimant, Dr. Solon S. Bernstein, was in its employ on the 21st day of March, 1921, and while sewing up a cadaver, he stuck the needle with which he was working into his right hand setting up " infection and lymphanagitis." In the first instance the State Industrial Board denied compensation on the ground that claimant was " not an employee under the law." On subsequent hearings, and as a consequence thereof, the claimant was awarded compensation. The appeal from that award presents a single question which is stated by the carrier's attorney as follows: " The question in this case, Mr. Referee, has been thoroughly discussed, whether or not this doctor shall be considered an employee, the claimant in this case, it is our con-

tention, cannot be considered an employee, and his work will not come under the Compensation Law. He is not a worker or an operator. He does not work as a workman, which can be considered under the Compensation Law. He is simply training there. He is an attendant of the hospital." The injuries sustained and the resulting consequences are admitted. It was asserted upon the hearing, and nowhere denied, that the hospital elected to come under the Workmen's Compensation Law; that this claimant and ten others similarly situated were intended to be covered; and that the carrier collected the premiums therefor. It now seeks to avoid liability. It was attitude of this kind that inspired the enactment of section 55 of chapter 615 of the Laws of 1922, Workmen's Compensation Law. The argument advanced by the appellant, carrier, is that claimant was an " interne " in the hospital. That term as defined in Dr. Geo. M. Gould's Medical Dictionary is, " a resident physician of a hospital." That by reason thereof he is not covered and could not, under any circumstances, be covered by the Workmen's Compensation Law. The principal case relied upon by appellant to sustain its contention is *Schloendorff* v. *New York Hospital* (211 N. Y. 125). In that case the patient sued the hospital for an injury following an operation to which she claimed she did not consent. She was denied the relief sought, *first,* because of the doctrine of waiver, and *second,* because the physician operating was an independent contractor in that in performing the operation he was not called upon to obey instructions from the hospital as to how he should operate. Doctors serve without pay on cases where they are called in from an independent practice of their own entirely distinct from the hospital; they consent to come, not as an employee, but without restriction; they perform the act as their own conception of the relief sought shall dictate. We may well accept the rule laid down in *Kueckel* v. *Ryder* (54 App. Div. 252) as quoted by appellant in its brief. The very opposite is apparent in the case at bar. The distinction between this case and *Hexamer* v. *Webb* (101 N. Y. 377) is equally clear. As there is no relation of patient and hospital here, the appellant must necessarily urge that claimant was an independent contractor. It must admit that claimant was either an independent contractor or an employee. We cannot make a contract advantageous to the carrier if, in fact, none such existed or was so intended by the parties making it. That the relation was contractual must be admitted. The Beth Israel Hospital knows what contract it made with the claimant, and through its superintendent has testified as to what that contract was. Because the claimant was a physician he was not precluded from hiring to the hospital as an employee.

He was hired for two years and as compensation received his room, board, laundry work and three uniforms a year, conceded to be of the value of twenty-five dollars a week. If he failed in the performance of the duties assigned to him by reason of incompetency or otherwise he could be discharged. The superintendent testified: " They [speaking of the internes] are not independent. They are employed to serve under the attending physicians and carry out their orders. * * * He was for a period of time to carry out all my orders and the orders of the attending physicians under whose orders he was to take orders and carry them out. * * * It is the rule of the hospital the members of the house staff [which included this claimant] cannot practice their profession. * * * Outside or inside. They are not there as doctors treating a case. They are carrying out the orders of a doctor just as I would carry out the orders of my family doctor in the treatment of a case in my own family." The claimant swears he was an employee, that he acted under other directing minds. Under this state of facts the State Industrial Board found as a fact that claimant was an employee.

I favor affirmance of the award.

VAN KIRK and HASBROUCK, JJ., concur; HINMAN, J., dissents, with an opinion, in which H. T. KELLOGG, Acting P. J., concurs.

HINMAN, J. (dissenting):

I cannot distinguish this case from what was held in the case of *Schloendorff* v. *New York Hospital* (211 N. Y. 125), wherein it was said: " The relation between a hospital and its physicians is not that of master and servant. The hospital does not undertake to act through them, but merely to procure them to act upon their own responsibility." The court also said (p. 132): " There is no distinction in that respect between the visiting and the resident physicians. * * * Whether the hospital undertakes to procure a physician from afar, or to have one on the spot, its liability remains the same. * * * It is true, I think, of nurses as of physicians, that in treating a patient they are not acting as the servants of the hospital. The superintendent is a servant of the hospital; the assistant superintendents, the orderlies, and the other members of the administrative staff are servants of the hospital. But nurses are employed to carry out the orders of the physicians, to whose authority they are subject." Claimant says he was a house physician. So was one of the physicians referred to in the *Schloendorff Case* (*supra*). Claimant's accident occurred during the second six months of his hospital service, during which time he says he was subordinate to the head house physician and assisted

him at all times, as a physician. He had performed an autopsy on a patient who had died in the hospital and was sewing up the incision in the body when the accident occurred, a mere incident to the performance of the autopsy. He says: " I was at the time the pathologist, the pathological interne, and it was my place to do the autopsies to the advantage of the hospital in order to be able to know exactly what the individual died of." I can see no distinction in principle between the services rendered to a living patient by a physician and the performance by such a physician of a *post-mortem* examination such as claimant was doing. The relation of master and servant did not exist but he was pursuing an independent calling under an authority delegated to him in aid of the hospital. His services were those of a physician and were rendered in return for the opportunity to pursue his own training for his independent calling. The essential feature of the arrangement between him and the hospital was that he should render service as a physician in the rendering of which he would obtain his desired post-graduate experience. It was an honorable appointment rather than an employment for pecuniary gain. In a very real sense, the arrangement was that he should pay for what he was to get by services rendered rather than that he should receive board, room and laundry work for services rendered. He did not work for a livelihood for pecuniary gain but, like the general physician or surgeon in regular practice who received an appointment on the general staff of the hospital, he was the recipient of an honorable privilege or opportunity to satisfy his own purposes for which he paid in professional services as required under the rules. He was not permitted to engage in private practice inside or outside the hospital; but it was not because he was the servant of the hospital, but because of the control of the hospital by its managers to which he submitted when he accepted the appointment. The hospital had the power to discharge him, but for the same reason. He was not a wage-earner but received his board, room, uniforms and laundry service as a concession to him arising out of the necessity of his being constantly at hand under the rules applicable to his particular appointment. If the rules of the hospital had provided for enough sets of internes to permit them to live outside the hospital, there would be no difficulty in determining that he was not a wage-earner. What had he to lose if totally disabled? Was it wages in the form of board and other living advantages such as he enjoyed? No. The essential thing that he would lose would be training and the opportunity to go forward with his preparation for his life work. If he suffered a loss in terms of earning power it essentially related to his oppor-

tunity or the lack of it to leave the hospital equipped to engage in the practice of his profession. In this case, the claimant did not lose even his living expenses during his disability. He was cared for by the hospital and he was still an interne at the time of the hearings. I am unable to see how claimant can recover an award in this case, either under the Workmen's Compensation Law or the contract of insurance, the hospital having elected to bring only its *employees* under the act and the claimant not having been an employee.

I favor a reversal of the award and a dismissal of the claim.

H. T. KELLOGG, Acting P. J., concurs.

Award affirmed, with costs in favor of the State Industrial Board.